IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:05CV445

| | |
|---|---|
| GARY ROSE, on behalf of himself and all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) SLM FINANCIAL CORP. and ) SLM MORTGAGE CORPORATION-NC, ) ) Defendants. ) | ORDER |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion to Remand" (Document No. 8), filed November 18, 2005. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is ripe for disposition.

Having carefully considered the parties' arguments, the pleadings, and the applicable authority (including the Truth in Lending Act and the Real Estate Settlement Procedures Act), and having heard oral argument, the undersigned will <u>deny</u> Plaintiff's Motion to Remand for the reasons discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed this action on September 19, 2005, in the General Court of Justice, Superior Court Division of Mecklenburg County, North Carolina, bringing claims for violation of North Carolina's unfair and deceptive trade practices statute, breach of the duty of good faith and fair dealing, and breach of contract. Plaintiff also seeks certification of a class action in connection with these claims.

Plaintiff's claims arise out of a mortgage loan Plaintiff sought and obtained through Defendants. In November 2002, Plaintiff applied for a mortgage loan at Defendants' Asheville

1

office. Plaintiff alleges that Defendants made "certain written disclosures to plaintiff about the interest rate on his loan and about the commissions defendants would receive as brokers of the loan." Complaint, ¶ 3. At the closing of the loan, Plaintiff claims, Defendants "unilaterally increased their commissions and fees, without prior disclosure to Plaintiff, and without Plaintiff's consent." Complaint, ¶ 4.

On October 21, 2005, Defendants timely removed the case pursuant to 28 U.S.C. §§ 1331 and 1441, asserting that Plaintiff's breach of contract claim raises a federal question. On November 17, 2005, Plaintiff filed a Motion to Remand and requested attorney's fees and costs. Plaintiff's Motion has been fully briefed and argued, and it is ripe for disposition.

## II. **DISCUSSION**

Federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A defendant is entitled to remove a case brought in state court to federal court if the plaintiff could have brought it in federal court originally as a civil action "arising under" federal laws. Grable & Sons Metal Products, Inc. v. Darue Engineering & Manuf., 545 U.S. 308, 312 (2005). 28 U.S.C. § 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Under 28 U.S.C. § 1441(a), the existence of subject matter jurisdiction is a threshold issue. Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citation omitted) ("[T]he subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction

which Congress has prescribed."); Darcangelo v. Verizon Comm., Inc., 292 F.3d 181, 186 (4th Cir. 2002) ("In general, an action filed in state court may be removed to federal court only if it might have been brought in federal court originally").

The party seeking federal jurisdiction - here, Defendants SLM Financial Corp. and SLM Mortgage Corporation-NC - has the burden of proving that subject matter jurisdiction exists. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); Norfolk Southern Ry. Co. v. Energy Development Corp., 312 F. Supp. 2d 833, 835 (S.D.W.Va. 2004). Absent a proper basis for subject matter jurisdiction, a removed case must be remanded to state court. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998); Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir .1999).

As explained in 2005 by the United States Supreme Court:

> The provision for federal question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1982). There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues.

Grable, 545 U.S. at 312 (citing Hopkins v. Walker, 244 U.S. 486, 490-91 (1917)). Historically, federal courts used myriad (and, at times, seemingly contradictory) tests and methods of analysis to determine when jurisdiction lay over this narrow class of claims "arising under" federal law. Before Grable, the Circuits were split over whether Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), required a federal cause of action to be stated on the face of a complaint as a prerequisite to the exercise of federal question jurisdiction.

Grable resolved this dispute, stating the appropriate test to be used in determining when federal question jurisdiction lies over a state-law claim:

> Does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?

Grable, 545 U.S. at 312-13.

### A. Does Plaintiff's breach of contract claim necessarily raise a federal issue?

According to Grable, we must first determine whether Plaintiff's breach of contract claim necessarily raises a federal issue. On the face of his Complaint, Plaintiff alleges that Defendants made "*certain written disclosures* to plaintiff about the interest rate on his loan and about the commissions defendants would receive as the brokers of the loan." Complaint, ¶ 3 (emphasis added). These "written disclosures," Plaintiff alleges, formed the basis of a contract to provide Plaintiff with a loan at "the disclosed interest rate" and "with payment of the disclosed fees." It was this contract, Plaintiff alleges, that was breached when Defendants "unilaterally increase[ed] the commissions and fees at or immediately prior to closing." Complaint, ¶¶ 50-51.

Despite these and other references to the "written disclosures," Plaintiff did not attach any such documents to his Complaint. Defendants attached to their Answer and to their Brief in Opposition to Plaintiff's Motion to Remand all of the "disclosures" that had been provided to Plaintiff within three days of his loan application, arguing that Plaintiff was relying on disclosures issued pursuant to the federal Truth in Lending Act (15 U.S.C. § 1601, *et seq.*) and the Real Estate Settlement Procedures Act (12 U.S.C. § 2601, *et seq.*). Although these documents were not attached to Plaintiff's Complaint, they are integral to his allegations and are deemed incorporated into his Complaint by reference. Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 195 n. 5 (4th Cir. 2002); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th

Cir. 1999). Plaintiff has not disputed, either in his briefs or during oral argument, that he is relying on these written disclosures as the basis for his breach of contract claim.

In order for Plaintiff to succeed on his breach of contract claim, he must first establish that "the plaintiff and the defendant mutually agreed to the same material terms for doing or refraining from doing a particular thing." North Carolina Pattern Jury Instructions (Issue of Contract Formation). Here, Plaintiff argues that Defendants entered into a written contract with two material terms: Defendants would provide Plaintiff with a loan at a particular interest rate after payment of a particular "disclosed fee." Having reviewed the relevant documents, the Court concludes that Plaintiff will necessarily have to rely on one or both of the disclosures issued pursuant to federal law in order to establish the existence of a contract with these material terms.

The Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, ("TILA") requires a mortgage lender or broker to disclose, *inter alia*, the "Annual Percentage Rate" ("APR") a borrower will pay in connection with a particular loan. 15 U.S.C. §§ 1638, 1639. Lenders and brokers also are required to issue a "good faith estimate" of the APR within three business days after receiving a consumer's written loan application on a purchase-money or construction mortgage. 12 C.F.R. 226.19(a)(1). Regardless of when the disclosures are made, TILA regulations expressly permit lenders and brokers to "make the disclosure based on the best information reasonably available at the time," so long as the disclosure states "clearly that the disclosure is an estimate." 12 C.F.R. 226.17(c). TILA, and the federal regulations promulgated thereunder, extensively regulate the form in which the disclosures are made and restrict the specific language a lender or broker may use therein.

Similarly, mortgage brokers are required under the Real Estate Settlement Procedures Act ("RESPA") and Regulation X to provide a "good faith estimate" of all commissions and fees a borrower is expected to pay in connection with obtaining a loan within three days of receiving an application. 24 C.F.R. § 3500.7. This Good Faith Estimate must include disclosures of all expected broker fees, "commissions," and similar charges. 24 C.F.R. § 3500.7.

Plaintiff argues that the TILA disclosure and the Good Faith Estimate, issued within three days of Plaintiff's loan application pursuant to TILA and RESPA, form some substantial part of the contract on which his state law claim is based. As a result, Plaintiff's claim will necessarily require resolution of a federal issue: Can TILA disclosures and RESPA Good Faith Estimates - which Defendants were required to issue under federal law using federally mandated terms - form the basis of a contract? Thus, Plaintiff's claim raises an "important issue of federal law that sensibly belongs in federal court." Compare Grable, 545 U.S. at 315. This case involves "a controversy respecting the conclusion and effect of the [federal] laws." Id. at 316 (citing Hopkins v. Walker, 244 U.S. at 489).

### B. Is the federal issue "actually disputed" and "substantial" such that there is a serious federal interest in having the matter heard in federal court?

Second, the Court must decide whether the federal issue raised by Plaintiff's breach of contract claim is "actually disputed" and "substantial," such that there is a serious federal interest in having the matter decided by a federal court.

Together, TILA and RESPA form an important and extensive federal regulatory scheme intended to provide mortgage applicants with early information about the terms of the loans for which they apply. The stated purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid uninformed use of credit . . . ." 15 U.S.C. § 1601. It is for this reason

6

that lenders and brokers often are required to issue TILA and RESPA disclosures <u>within three business days</u> after receiving a loan application - sometimes well before a potential borrower has been approved for any particular loan.

TILA and RESPA permit - and in some cases require - that these disclosures be issued as "estimates" in order to facilitate the disclosure of the information to borrowers early in the application process. Plaintiff's claim that these federally mandated disclosures constitute the basis of a written contract will require this Court to consider the construction and effect of TILA and RESPA to determine whether those statutes permit federally mandated "estimates" to be construed as such.

"The [arising under] doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." <u>Grable</u>, 545 U.S. at 312. Where a federal regulatory scheme requires private parties to undertake certain actions in order to comply with the law, the federal courts necessarily have a serious interest in examining the scope of liability that might arise as a result. Thus, the undersigned concludes that the issue of whether TILA and RESPA disclosures can form the basis of a contract is a serious federal interest that justifies federal jurisdiction.

### C. **Will the exercise of federal jurisdiction disturb the congressionally approved balance of judicial responsibilities?**

Finally, the Court must decide whether the exercise of federal jurisdiction in this case will upset the congressionally approved balance of judicial responsibilities between state and federal courts. Like <u>Grable</u>, this case presents the rare situation of a substantial, contested matter of federal law embedded in a state law claim. We are unaware of any significant number of

cases in this or any other jurisdiction in which parties argue that federally mandated disclosures themselves form a contract. Thus, it appears to be the "rare case" where a loan applicant attempts to construe these federally mandated disclosures as enforceable written contracts. Compare Grable, 545 U.S. at 315 ("[B]ecause it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor."). Granting federal jurisdiction in this instance will not open the floodgates of federal court to all breach of contract claims or all claims relevant to TILA or RESPA.

### III. CONCLUSION

This case fits into the "slim category Grable exemplifies," and jurisdiction in federal court over this breach of contract claim is proper. Cf. Empire Healthchoice v. McVeigh, __ U.S. __, 126 S. Ct. 2121, 2137 (2006). As a result, the Court has proper supplemental jurisdiction over Plaintiff's other state law claims for violation of North Carolina's § 75-1.1 and for breach of the duty of good faith and fair dealing. Based on the Court's finding that federal jurisdiction here is proper, Plaintiff's request for attorney's fees and costs in connection with his Motion to Remand is moot.

**IT IS, THEREFORE, ORDERED** that "Plaintiff's Motion to Remand" (Document No. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for fees and costs is **DENIED**.

**IT IS FURTHER ORDERED** that the parties conduct an Initial Attorneys' Conference and file a report of that conference along with a proposed case management plan, pursuant to Fed.R.Civ.P. 26(f) and L.R. 16.1(A), on or before **March 30, 2007**.

**SO ORDERED**.

Signed: February 28, 2007

David C. Keesler
United States Magistrate Judge