# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:05-CV-445-DCK

| | |
|---|---|
| **GARY ROSE,** on behalf of himself and all others similarly situated, | |
| **Plaintiff,** | **ORDER** |
| v. | |
| **SLM FINANCIAL CORP.** and **SLM MORTGAGE CORPORATION-NC,** | |
| **Defendants.** | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Class Certification" (Document No. 41) and "Plaintiff's Brief In Support Of Motion For Class Certification" (Document No. 42) filed on April 21, 2008; "Defendants' Opposition To Plaintiff's Motion For Class Certification" (Document No. 48) filed June 6, 2008; and "Rose's Reply to SLM's Response in Opposition to Motion for Class Certification" (Document No. 57) filed July 2, 2008. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having carefully considered the briefs, the record, the arguments of counsel at a hearing on September 4, 2008, and the applicable authority, the undersigned will <u>deny</u> "Plaintiff's Motion For Class Certification."

## I. BACKGROUND

On or about November 14, 2002, Gary Rose ("Plaintiff") sought to obtain a mortgage loan through Defendant SLM Financial Corporation and SLM Mortgage Corporation-NC (collectively "SLM" or "Defendants") at Defendants' Asheville, North Carolina branch.

(Document No. 41 at 1). Specifically, Plaintiff sought to refinance the two mortgages on his home. (Document No. 48 at 5). On November 15, 2002, Plaintiff received and signed a "Placement Fee Payment Authorization" that authorized a broker fee of 1.5% of the loan amount to SLM. (Document No. 41-3 at 3). That same day, SLM provided a "Good Faith Estimate Of Settlement Costs" that designated a loan origination fee of 1.5%. (Document No. 41-3 at 4). On December 9, 2002, a "Settlement Statement" was signed by Plaintiff that included in the settlement charges a broker fee of 2%. (Document No. 41-3 at 5-6).

Plaintiff has testified that he did not notice the broker fee increase until the day after the closing. (Document No. 48 at 9). Upset by the discovery, he contacted Kathie Waddell, the SLM loan officer he had been working with, and his closing attorney. Id. Allegedly, both Ms. Waddell and his attorney informed Plaintiff that he was allowed to rescind the loan transaction if he was displeased for any reason. Id. Plaintiff did not cancel the loan and instead filed this suit more than two-and-a-half years later. Id.

Plaintiff's lawsuit principally contends that "SLM schemed to bilk borrowers out of extra funds and earn extra commissions and fees through bait and switch tactics." (Document No. 41 at 1). Plaintiff argues that Defendants unilaterally and without prior disclosure or consent increased its commission on his loan from 1.5 % to 2%. (Document No. 41 at 2). Furthermore, Plaintiff asserts a class action is appropriate because Defendants have engaged in the same "bait and switch" tactics "in hundreds of transactions with North Carolina consumers." (Document No. 41 at 1). Plaintiff proposes that the class of consumers to be certified is:

> All North Carolina residents who acquired loans through either of the Defendants and who paid origination fees, broker commissions or commitment fees that exceeded the percentage rate for these fees set forth in the authorization or written disclosures.

(Document No. 41 at 3).

Plaintiff brought this action on behalf of himself and all others similarly situated on September 19, 2005, for claims of: 1) violation of the Unfair and Deceptive Trade Practices Act; 2) breach of the duty of good faith and fair dealing; and 3) breach of contract. (Document No. 1). On October 21, 2005, Defendants filed their "Notice Of Removal" to this Court. Id. Plaintiff filed a motion to remand to state court on November 18, 2005, which was denied by the undersigned on February 28, 2007. On April 21, 2008, Plaintiff filed the instant motion for class certification. The Court held a hearing on the motion on September 4, 2008, and is now prepared to issue its ruling.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 23, certification of a class is a two-step process. First, the proposed class must satisfy the four requirements established in Rule 23(a):

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> **(1)** the class is so numerous that joinder of all members is impracticable;
>
> **(2)** there are questions of law or fact common to the class;
>
> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> **(4)** the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); see also, Gunnells v. Healthplan Serv., 348 F.3d 417, 423 (4th Cir. 2004). "These basic prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy, respectively." Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., No. 5:06-CV-160-D, 2008 WL 3914471 at * 2 (E.D.N.C. August 25, 2008).

Second, the proposed class must fall within one of three categories enumerated in Rule 23(b). Here, Plaintiff seeks class certification under Rule 23(b)(3), which provides that a class action is appropriate where

> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > **(D)** the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

In class actions brought under Rule 23(b)(3), common issues must *predominate* over individual ones and class action must be *superior* to other available methods of adjudication. Gunnells, 348 F.3d at 423. "The party seeking class certification bears the burden of proof on the predominance and superiority requirements." Farrar & Farrar Dairy, Inc., 2008 WL 3914471 at *3 citing Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 321-22 (4th Cir.2006); Gregory v. Finova Capital Corp., 442 F.3d 188, 190 (4th Cir.2006). "At bottom, it tests whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation,' ... and whether certification would increase judicial economy." Id. at *4, quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).

"In determining whether to certify a class action, a court should interpret Rule 23 in such a manner as to promote justice and judicial efficiency . . . A district court must therefore take a

"close look," and engage in "rigorous analysis." Farrar & Farrar Dairy, Inc., 2008 WL 3914471 at *3 (citations omitted). "A district court has broad discretion in deciding whether to certify a class." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 317 (4th Cir. 2006) quoting Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001).

### III. DISCUSSION

After careful and rigorous analysis of Plaintiff's claims as applied to the requirements of Fed.R.Civ.P. 23, the undersigned does not find that Plaintiff's proposed class certification is appropriate or promotes justice and judicial efficiency. Rather, this appears to be one of those cases where the proposed class is "no more than a 'hodgepodge of factually as well as legally different plaintiffs,' that should not have been cobbled together for trial." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 343 (4th Cir. 1998) (internal citation omitted).

The burden is on Plaintiff to satisfy all the prerequisites of Rule 23(a) and at least one of the categories outlined under Rule 23(b).[1] With regard to the first step of the process under Fed.R.Civ.P. 23(a), the Court will focus its analysis on the commonality and typicality requirements of Fed.R.Civ.P. 23(a)(2) and (3). "The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998) quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 341 (7th Cir.1997).

---

[1] "No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b)." Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998). See also, Gariety v. Thornton, 368 F.3d 356, 362 (4th Cir. 2004).

**A. Rule 23(a) - Commonality and Typicality**.

According to the Sixth Circuit, the commonality requirement "deals with shared questions of law and fact ... there need only be one question common to the class ... [w]hat we are looking for is a common issue the resolution of which will advance the litigation." Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998).

> In Sprague, General Motors' ("GM") employees claimed that GM had breached a contract governing their retirement benefits. The Sixth Circuit found that the lack of a uniform promise by GM to its employees was fatal to class treatment.... "GM had made an individual 'side deal' with each early retiree. Each putative side deal involved any pertinent document the retiree might have signed ... as well as any pertinent representations GM might have made to the retiree, whether orally, in writing, or both.... Proof that GM had contracted to confer vested benefits on one early retiree would not necessarily prove that GM had made such a contract with a different early retiree.... Given these myriad variations, it seems to us that the plaintiffs' claims clearly lacked commonality...."

Crosby v. City of Gastonia, No. 3:06cv462, 2008 WL 1944399 at *3 (W.D.N.C. May 1, 2008) quoting Sprague, 133 F.3d at 398.

The undersigned is not convinced that Plaintiff's proposed class -

> All North Carolina residents who acquired loans through either of the Defendants and who paid origination fees, broker commissions or commitment fees that exceeded the percentage rate for these fees set forth in the authorization or written disclosures

- shares a common issue the resolution of which will advance the litigation. (Document No. 41 at 3). The class does not designate a particular time period for the relevant transactions, or any amount by which fees or commissions exceeded "the authorization or written disclosures," or who or what was responsible for fees exceeding the authorization or written disclosures. Plaintiff's motion forecasts a class of hundreds of plaintiffs, who indisputably would represent

6

dealings with different branch offices, loan officers, lenders, interest rates and/or dates. As in Sprague and Crosby, the lack of a uniform promise is concerning. Certainly many of the proposed plaintiffs would have some issue(s) in common, but it is not clear that they all share a common issue that will advance the litigation. Defendants contend, and the undersigned agrees, that potentially there were varying individually tailored written disclosures, unique oral representations, different types and amounts of charged fees, and that closing costs increased for different reasons – for each proposed class member.

It is difficult to conceive that the Court might analyze the specifics of Mr. Rose's transactions in evaluating his claims for unfair and deceptive trade practices, breach of good faith and fair dealing and breach of contract, and make a ruling applicable to a class of hundreds. Under the circumstances of this case, like Sprague, the myriad of variations of each plaintiff's situation defeats commonality. "A question is not common, ... if its resolution 'turns on consideration of the individual circumstances of each class member.'" Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006).

Along these lines, Judge Conrad in Crosby points out that the Fourth Circuit has rejected certifying a class on a contract claim:

> [P]laintiffs simply cannot advance a single collective breach of contract action.... [T]he differences between the [contracts] raise the distinct possibility that there was a breach of contract with some class members, but not with other class members. In such a case, the plaintiffs cannot amalgamate multiple contract actions into one.

Crosby, 2008 WL 1944399 at *3 quoting Broussard, 155 F.3d at 340. The undersigned agrees and finds that it would be inappropriate to rule on Plaintiff's claims without considering the unique circumstances of individual class members.

Furthermore, the Court is not convinced that Plaintiff has met his burden to show that his circumstances are typical of the proposed class. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." Sprague, 133 F.3d at 399.

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.... A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

Id. (citations omitted)

In the undersigned's view, Plaintiff Rose, the proposed class representative, has not met his burden of showing that his claims are typical of the proposed class. The proposed class includes those customers of Defendants who paid fees that exceeded the percentage rate set forth in previous estimates, disclosures and/or authorizations. However, like Crosby and Sprague, the Plaintiffs cannot assert that the promises made by Defendants to Plaintiffs were uniform. Whether or not the class representative can prove his claims against Defendants will not properly establish that every other member of the class would or would not also have valid claims. In fact, it is likely that there are numerous variations between the information and promises provided by Defendants to the proposed class of Plaintiffs.

For example, one variation might involve Plaintiff's claim that Defendants violated the Unfair and Deceptive Trade Practices Act, N.C.G.S. 75-1.1, which requires that a plaintiff establish that (1) the defendant engaged in an "unfair" or "deceptive" act or practice; (2) the act was in or affecting commerce; and (3) the act injured the plaintiff. Rutledge v .High Point

Regional Health System, 558 F.Supp. 2d 611, 619 (M.D.N.C. 2008) citing N.C. Gen.Stat. § 75-1.1  If a borrower (class member) understood that the fees initially disclosed were estimates that could change before closing, then the claim of "unfair" or "deceptive" act or practice would likely fail - but Plaintiff has not articulated a class definition that takes into account the understanding of the individuals in each loan transaction.

It is also undisputed that since Plaintiff Rose was refinancing an existing mortgage, he had the right, within three days of closing, to cancel the transaction. (Document No. 48 at 9).  If he had chosen to rescind, his existing mortgages would have remained and his closing costs would have been refunded.  Id.  Despite being informed of this option by the Defendants' loan officer and the closing attorney, Mr. Rose chose not to cancel his loan.  The undersigned is unaware of any evidence that Mr. Rose's position in this regard was "typical" of the proposed class, but these particular circumstances may have significant bearing on the success of Mr. Rose's claims.

This Court is not willing to rule on the claims of the proposed Plaintiffs without considering the unique circumstances, including oral and written communications, between the Plaintiffs and Defendants.  "Because the plaintiffs' breach of contract claims depend upon unique promises made to each of them individually . . . each plaintiff can distinguish his particular case on the facts."  Crosby, 2008 WL 1944399 at *5.  "Therefore, any verdict returned for an individual plaintiff will not prejudice the ability of other class members to separately pursue their claims against [Defendants]."  Id.  The class representative here fails to sufficiently state common or typical factual or legal arguments to represent a proposed class of hundreds of plaintiffs.

## B. Rule 23(b)(3) - Predominance and Superiority

Although failure to satisfy one of the prerequisites of Rule 23(a) is sufficient to deny certification of the proposed class the undersigned will also briefly address Plaintiff's argument pursuant to Rule 23(b)(3).

> Rule 23(b)(3) has two components: **predominance** and **superiority**. The **predominance** requirement is similar to but "more stringent" than the commonality requirement of Rule 23(a). Lienhart, 255 F.3d at 146 n. 4. Whereas commonality requires little more than the presence of common questions of law and fact, see id. at 146, Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Gariety, 368 F.3d at 362 (internal quotation marks omitted). The **superiority** requirement ensures that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (emphasis added).

Plaintiff argues that "the issue of whether a contract has been formed is not merely "in the picture," but predominates over individual issues" and that whether Defendants breached a duty of good faith by failing to disclose an increase in a fee does not require analysis or inquiry of individual loan transactions. (Document No. 42 at 12). The undersigned respectfully disagrees. Whether contracts or good faith and fair dealing were breached may hinge on the individual transactions of class members and what was disclosed in writing and orally during each of those transactions. The undersigned believes that the claims asserted will require an "individual 'fact-intensive inquiry.'" Gunnells v. Healthplan Services, Inc., 348 F.3d 417, 435 (4th Cir. 2003). Plaintiff's broad characterization of this proposed class does not predominate over the unique issues affecting individual borrowers.

Plaintiff also contends that the proposed class consists of members who individually would not have the resources to pursue their claims. (Document No. 42 at 13). Therefore, he argues in this case that class action is the superior vehicle. Id. Plaintiff's contention is practical, but because the Court is not convinced of the commonality and typicality of the class representative, the undersigned cannot find that class action is indeed a superior vehicle. Although there are undoubtably similarities between the proposed class members, the undersigned does not find that a class action would provide a superior vehicle for a fair and efficient adjudication of the controversy.

Plaintiff "must show that common questions of law or fact go beyond merely meeting the "commonality" requirement of Rule 23(a)(2)." Crosby, 2008 WL 1944399 at *5. As was the case in Crosby, since the "commonality" requirement of Rule 23(a)(2) is not met, plaintiffs cannot show that the "predominate commonality" of Rule 23(b)(3) is met. Id. Based on the foregoing, the Plaintiff has failed to meet his burden under Rule 23(b)(3) to establish that the proposed class is sufficiently cohesive, and that class action is the superior vehicle for fair and efficient adjudication of the underlying controversy.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Plaintiff's Motion For Class Certification" (Document No. 41) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall jointly file a proposed case management plan on or before **December 1, 2008**. The Court will then determine in its discretion whether a pretrial conference is appropriate.

**SO ORDERED**.

Signed: November 13, 2008

David C. Keesler
United States Magistrate Judge